EDGAR A. CRANE *et al.*

*v.*

MONROE N. LORD.

*Filed at Ottawa November 10, 1881.*

1. RESCISSION—*can not be had after contract has been abrogated, and new one entered into with another.* A sold B a fourth interest in certain real property, receiving part payment, and notes for the balance. Afterwards the conveyance to B was cancelled, and a new one made to B's wife, who gave her notes for the balance due, secured by trust deed to C, which notes A indorsed to C. B becoming dissatisfied, all parties came together, when a new arrangement was made, by which the deed to B's wife was surrendered and her notes given up, and B then took a contract from C for the same premises, giving his notes to him for the sum due on the prior contract. B afterwards filed his bill against A to set aside his original contract as fraudulent, but not making C a party, or seeking to have the contract with him rescinded: *Held,* that by the subsequent arrangement the original contracts with A were abrogated, and there was no contract between A and B to be rescinded.

2. CHANCERY JURISDICTION—*remedy at law.* Where a contract for the purchase of land alleged to have been induced by fraudulent and false representations is abrogated by the parties, without any promise to return the purchase money paid, and the purchaser takes a contract for the purchase of the same land for the sum due on the original purchase, from a third person, who is invested with the title, a court of equity has no jurisdiction of a bill by the purchaser seeking to recover back the money paid the original vendor, on the ground of fraud, the remedy being at law, if any.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. J. A. JAMESON, Judge, presiding.

Mr. LEVI SPRAGUE, and Mr. E. A. CRANE, for the appellants, made the following among other points:

Fraud is a matter of chancery jurisdiction, notwithstanding the statute may have conferred a similar jurisdiction upon courts of law. *Babcock* v. *McCamant,* 53 Ill. 215; *Truett* v. *Wainwright,* 4 Gilm. 418.

In cases of fraud, chancery has always jurisdiction, though courts of law may exercise it concurrently in all cases in which their powers are sufficient for the relief sought. *Jones* v. *Neely,* 72 Ill. 449; 1 Story's Eq. Jur. secs. 64, 76, 80.

An agent employed to purchase, can not sell his own property to his principal without disclosing his interest. 1 Story's Eq. Jur. sec. 316; *Pensonneau* v. *Bleakley,* 14 Ill. 15; *White et al.* v. *Sutherland,* 64 id. 181; *Cottom* v. *Holliday,* 59 id. 176.

That a purchaser may, for fraud, rescind and recover back the money paid by him, even though it be not possible to restore the parties to their former position, counsel cited *Masson* v. *Bovet,* 1 Denio, 69; *Hopkins* v. *Snedeker,* 71 Ill. 449; 2 Parsons on Contracts, 278; *Thomas* v. *Coultas et ux.* 76 Ill. 493.

Mr. GEO. C. CHRISTIAN, for the appellee, made various points in the case, aside from the question of jurisdiction upon which the case was decided.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill, filed in the Superior Court of Cook county, by appellants, asking to have a contract for the purchase of a fourth interest in a tract of land set aside, on the ground of fraud perpetrated by appellee on appellants. Appellant Crane claims he first employed appellee to loan some money for him; that appellee persuaded him to invest it in real estate, as being more profitable; that he knew of a piece that could be purchased at low rates; that it belonged to a person in Europe, who was hard pressed for means, and was compelled to sell, and had placed the title in another person, for the purpose of conveying to purchasers; that appellee professed to be anxious to purchase the property, but claimed to lack the requisite means, but would do so if he could get others to join him; that he proposed to take one-fourth of the title if Crane would take one-fourth, and one Abbott would take the other half; that this was agreed to, but Abbott, on examining the abstract of title, declined to purchase; that it was then agreed that appellee should receive a deed for the entire piece of ground, and would sell to Crane one-fourth interest for $4100. Appellee received a deed for the tract from Silas C. Stevens.

In October, 1873, appellee gave to Crane an agreement in writing for a conveyance of one-fourth of the tract, which was situated on Indiana avenue, in the city of Chicago, on his paying the $4100 purchase money. Payments were made on the purchase money, interest and taxes, aggregating, as he claims, $2329.26. Subsequently a division of the property was made, and appellee made a conveyance of a lot, being Crane's fourth, and notes were taken for the balance of the purchase money. Subsequently this conveyance was cancelled, and a conveyance, bearing date in January, 1876, was made for the property from appellee to Crane's wife, and she and Crane executed two notes of $500 each, and two of

$800 each, drawing ten per cent interest, payable within five years, for the balance of the purchase money; and to secure their payment they gave a trust deed on the property to James Bolton. Appellee indorsed the notes to Bolton. Crane becoming dissatisfied, in June, 1878, notified appellee that he would pay no more on the notes, and tendered him a quitclaim deed for the premises, executed by himself and wife, and demanded the purchase money he had paid, but appellee refused to receive the deed, or to repay the money. Thereupon, Bolton, Crane and appellee came together, when a new arrangement was entered into. By it the deed to Mrs. Crane, which had not been recorded, was surrendered up, and the notes of Crane and wife were surrendered by Bolton and cancelled, and it was agreed that appellee should quitclaim the lot to Bolton, and, on Crane's proposition, a new contract was entered into between him and Bolton. By it Bolton was to release Crane from his personal liability on his and his wife's notes, Bolton to convey to him the lot on Crane's paying him a sum equal to the balance of the purchase money due on the first purchase from appellee, which amounted to $2820.60, with interest at six per cent, within five years from that date. Crane prepared the agreement for the conveyance, and he and Bolton executed it.

Crane claims that appellee perpetrated a fraud on him in selling him the property, by misrepresenting its value, and its salable quality, etc., and also in false representations as to the ownership of the property, and inducing him to make the purchase under the belief that appellee was a co-purchaser, when he was in fact a part owner, and was but selling the property to Crane. As to fraudulent representations as to the value of the property, etc., we presume that branch of the case was abandoned in the Superior Court, as we find no evidence as to its value, whether less or greater than the contract price. There can therefore be no discussion on that

question, as the proof must sustain the allegations of the bill, and there is none whatever as to that allegation.

On the question as to the representations as to who owned the property, there is evidence. It appears that John M. Wilson sold to Stevens, Bolton, Flack and appellee, a tract of land embracing the lot in controversy, and as a matter of convenience in making sales they had Wilson to convey it to Stevens, to hold for himself and the other parties. They entered into a written agreement, declaring their several interests, by which it appears that appellee held three-eighths, Stevens one-fourth, Bolton one-fourth, and Flack one-eighth. Thus it appears that it was untrue that the property belonged to a party in Europe, who was compelled from necessity to sell it; but it does appear that appellee did own three-eighths of the title to the land he pretended he was purchasing with Crane.

Notwithstanding all of these facts, was there any subsisting contract between Crane and appellee in reference to this land when this suit was brought? If there was not, then there was none to be rescinded. At the instance of Crane appellee had twice conveyed the land,—once to him, and next to his wife,—in fulfillment of his part of the contract. Next, on these conveyances being cancelled, at his solicitation, appellee conveyed the property to Bolton, and the notes given on the first purchase were surrendered by Bolton, and Crane became the purchaser of him. It is difficult to perceive that this left any contract whatever relating to the land in existence between appellee and Crane. By that arrangement all prior contracts were abrogated and at an end, and the case, stripped of all extraneous circumstances, is but a bill to recover back all of the purchase money paid by Crane to appellee, leaving Crane the purchaser of the lot from Bolton at a much reduced price. Crane seems to be willing, if not anxious, to hold the property, as he does not make Bolton a party, and seek to be absolved from that con-

tract; but if he can recover the money paid appellee, with interest, as claimed, that will pay all but a fraction of the balance due on the purchase, and he will thus obtain the property by paying but a comparatively small sum more than he agreed to pay when he first purchased. Had appellee, when the last arrangement was entered into, promised to repay what he had received on the purchase, to Crane, would any one have contended that equity could entertain jurisdiction to decree its payment? The remedy in that case would have manifestly been at law. And if, from all the circumstances of the case, the law will imply a promise to repay it, the remedy, for the same reason, must be at law, and equity can not exercise jurisdiction to decree its repayment.

There was therefore no error in dismissing the bill, nor did the Appellate Court err in affirming the decree, and the decree of the latter court must be affirmed.

*Decree affirmed.*